IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Marcus L. Watts, ) | |
| ) | Civil Action No. 6:12-1170-JFA-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Wayne McCabe, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 41). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

The defendants filed a motion for summary judgment on October 22, 2012 (doc. 41). On October 23, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed his response to the motion on December 17, 2012 (doc. 58).

## FACTS PRESENTED

The plaintiff is currently incarcerated in Perry Correctional Institution, which is part of the South Carolina Department of Corrections ("SCDC"). At the time of the incidents alleged in his complaint, the plaintiff was an inmate housed at Lieber Correctional Institution serving a 35-year sentence for murder, possession of a weapon during a violent

crime, and grand larceny (def. m.s.j., ex. 1, sentencing sheets). The plaintiff alleges in his complaint that on March 9, 2012, he was forced to endure cruel and unusual punishment by way of excessive force by certain defendants and that certain other defendants were deliberately indifferent to his serious medical needs.

The plaintiff attached grievances to his complaint that he states were filed in regards to the incident alleged in his complaint (doc. 1-2 at pp. 2-4). The plaintiff signed a Certification of Inmate Orientation on December 7, 2007, certifying that he had completed the orientation program at Lieber advising him of the institutional rules and regulations, staff organization, safety program, and other programs as required by Agency policies and procedures (def. m.s.j., ex. 13, Certification of Inmate Orientation). On that same date, plaintiff also signed the Lieber Inmate Grievance Orientation form, indicating that he both read and understood the inmate grievance procedures (*id.*, ex. 14, Inmate Grievance Orientation).

On March 12, 2012, plaintiff filed a Step 1 grievance (# LCI-055-12) regarding the incident alleged in his complaint (doc. 1-2 at p. 4; def. m.s.j., ex. 15, Step 1 grievance dated 3/12/12). He requested that an investigation be initiated and that he be awarded one million dollars for grief, pain, and suffering. On March 19, 2012, the Inmate Grievance Coordinator responded that, due to the allegations, the grievance had been forwarded to the Division of Investigations ("DOI") (def. m.s.j., ex. 15). Prior to receiving a response to the first grievance, the plaintiff filed two more Step 1 grievances on March 21, 2012, regarding the same incident (#LCI- 0642-12 and #LCI–0643-12) (*id.*, ex. 17, 18). These grievances were unprocessed by the Inmate Grievance Coordinator, as they were deemed to be duplicates of the earlier grievance. The plaintiff states in his complaint that "[p]rison officials failed to respond in the amount of time stated on the form. I treated this as a denial and am appealing with this Complaint" (comp. at p. 2). The plaintiff delivered his complaint in the instant case to the Lieber mail room on April 30, 2012 (*see* doc. 1-3), and it was filed

on May 2, 2012. On July 5, 2012, Warden McFadden responded to plaintiff's grievance, essentially outlining the facts of the incident and denying the plaintiff's request for relief. The plaintiff signed his receipt of the response on July 31, 2012. The plaintiff was advised that he had five calendar days to file an appeal by filing a Step 2 grievance form (def. m.s.j., ex. 15). The defendants have submitted evidence showing that the plaintiff did not file a Step 2 grievance (*id.*, ex. 16, SCDC Inmate Grievance Inquiry detail).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise,

3

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The defendants argue[1] that the complaint should be dismissed because the plaintiff failed to exhaust his administrative remedies prior to filing the instant lawsuit. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is

---

[1] As the undersigned recommends that the complaint be dismissed *without prejudice* for failure to exhaust, the defendants' remaining arguments will not be addressed.

4

especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

In *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008), the Fourth Circuit explained that "[u]nder the [PLRA], prisoners must exhaust 'such administrative remedies as are available' *prior to filing suit in federal court* challenging prison conditions." 517 F.3d at 725 (emphasis added) (quoting 42 U.S.C. § 1997e(a)). The reason that the administrative remedies must be exhausted prior to the filing of a civil action, as opposed to after or contemporaneous therewith, was explained by the Supreme Court in *Porter*, in which the Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524–25. *See Cambron v. Harris*, C.A. No. 3:11-326-RMG-JRM, 2012 WL 1579580, at *3 (D.S.C. April 11, 2012), *adopted by* 2012 WL 1579497 (D.S.C. May 4, 2012) (stating that "[a] prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation.").

As set forth above, the plaintiff filed a Step 1 grievance on March 12, 2012, concerning the factual allegations in his complaint. On March 19, 2012, the Inmate Grievance Coordinator responded that, due to the allegations of excessive force, the grievance had been forwarded to the DOI. The plaintiff filed his complaint in the instant

case on May 2, 2012. On July 5, 2012, Warden McFadden responded to the plaintiff's grievance.

"An SCDC inmate must wait approximately 114 days from presenting his Step 1 written grievance to the prison to file a complaint in federal court. This time period gives the prison administrators a chance to resolve the matter without implicating judicial oversight of prison administration which is disfavored." *Jones v. Kay,* C.A. No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007).[2] "After approximately 114 days have passed, [a prisoner] will have exhausted 'such administrative remedies as are available.'" *Id.* (quoting 42 U.S.C. § 1997e(a)).

---

[2]"The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik v. Ward*, C.A. No. 8:08-cv-1886-RBH, 2010 WL 936777, at *2 n.4.

> As noted in *Jones v. Kay*, No. 07-3480-SB, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the time limits of this policy are summarized as follows:
>
>> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>>
>> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>>
>> (3) the Warden should respond to the grievant in writing within forty (40) days;
>>
>> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>>
>> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.
>
> *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

*Id.* (quoting *Jones*, 2007 WL 4292416, at *5).

The plaintiff does not contest his failure to file a Step 2 grievance, but instead contends that the exhaustion requirement should be considered met because "[p]rison officials failed to respond in the amount of time stated on the form. I treated this as a denial and am appealing with this Complaint" (comp. at p. 2). While a final determination of his Step 1 grievance was not rendered until July 5, 2012, the plaintiff filed the complaint in this action just 51 days after filing his Step 1 grievance. As stated by the Honorable Patrick Michael Duffy, United States District Judge, in a case considering this same argument:

> It is true that under certain circumstances a grievance procedure can be rendered not "available" if prison officials prevent an inmate from using it. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir.2003) (holding that inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.). But, the Court is unaware of any decision that regarded a two month delay as having rendered administrative remedies unavailable.

*Penny v. McBride*, C.A. No. 8:08-2404-PMD, 2009 WL 1346126, at *3 (D.S.C. May 13, 2009). At the time the plaintiff filed his complaint, no final determination by the Warden had been made, no substantial delay had occurred, and no Step 2 grievance had been filed. "Accordingly, regardless of the delay that ultimately ensued, the plaintiff had not exhausted his administrative remedies at the time of the filing of this case." *Id.* Furthermore, like the prisoner in *Penny v. McBride,* the plaintiff "has not, even now, exhausted his remedies." *Id.* The Warden responded to the Step 1 grievance on July 5, 2012, and the plaintiff signed his receipt of the response on July 31, 2012. Accordingly, he had until August 5, 2012, to file a Step 2

7

grievance, which he did not do (def. m.s.j., ex. 15, 16). The plaintiff did not give the grievance process an opportunity to work prior to filing his federal complaint as required by the above-cited law. As such, the case should be dismissed as the plaintiff failed to properly exhaust his administrative remedies.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 41) be granted and the plaintiff's complaint be dismissed *without prejudice* for failure to exhaust administrative remedies.

s/ Kevin F. McDonald<br>
United States Magistrate Judge

March 21, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).